# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL J. CIRRITO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MUNICIPAL MORTGAGE & EQUITY, LLC, MICHAEL L. FALCONE, MARK K. JOSEPH, WILLIAM S. HARRISON, MELANIE M. LUNDQUIST, CHARLES M. PINCKNEY, and DAVID KAY,<br><br>Defendants. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michael J. Cirrito, brings this action individually and on behalf of all other persons or entities that purchased and/or acquired the common stock of Municipal Mortgage & Equity, LLC ("MuniMae" or the "Company") between May 3, 2004 and January 29, 2008, inclusive (the "Class Period"). Plaintiffs' allegations are based upon, among other things: (a) the investigation conducted by and through their attorneys; (b) review and analysis of filings made by MuniMae with the United States Securities and Exchange Commission ("SEC"); (c) review and analysis of press releases, public statements, news articles, securities analysts' reports and other publications disseminated by or concerning MuniMae; and (d) other publicly available information about MuniMae. Most of the facts supporting the allegations contained herein are known only to the Defendants or are within their control. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth in this Class Action Complaint ("Complaint") after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of all persons or entities that purchased and/or acquired the common stock of MuniMae during the Class Period, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  The Defendants are MuniMae and six of the Company's most senior officers and directors: Chief Executive Officer ("CEO") Michael L. Falcone ("Falcone"), Chairman and former CEO Mark K. Joseph ("Joseph"), former Executive Vice President and Chief Financial Officer ("CFO") William S. Harrison ("Harrison"), former CFO Melanie M. Lundquist ("Lundquist), Chief Operating Officer and interim-CFO Charles M. Pinckney ("Pinckney"), and CFO David Kay ("Kay") (collectively, the "Individual Defendants" and together with MuniMae, "Defendants").

2.      MuniMae is a financial services company that arranges debt and equity financing for developers and owners of real estate and clean energy projects, as well as investment management and advisory services for institutional investors.

3.      The Class Period begins on May 6, 2004, when MuniMae issued a press release announcing its financial results for the first quarter of 2004 and highlighted the Company's "***29th Consecutive Increase in Distributions***."   (Emphasis in original.) Defendants reported increases in dividends in each of the following quarters during the Class Period.  Indeed, as recently as November 2, 2007, in a press release entitled "MuniMae Announces 43rd Consecutive Increase in Quarterly Distribution," Defendants assured the investing public that the Company was successfully executing its business plan, experiencing strong growth and that it would be able to continue increasing quarterly dividends as it had done for the past 10 years.

4.      Defendants also touted the Company's Class Period acquisitions of companies like MONY Realty Capital, Inc., Glaser Financial Group, Inc., Renewable Ventures, and SLF Management, LLC, and the Company's purported success in integrating the operations of these companies into its business plan.

5.      On March 10, 2006, MuniMae issued a press release disclosing that the Company would be restating more than three years of earnings and that the Company would delay the filing of its Form 10-K for fiscal 2005.  According to this press release, the restatement was needed to correct accounting errors related to related to: "1) recognition of syndication fees, 2) application of equity method accounting, 3) recognition of interest income, and 4) amortization of mortgage servicing rights." However, Defendants assured investors that the restatement would "not impact cash available for distribution," and would actually result in an increase in "previously reported net earnings" for certain periods, stating:

> For the nine months ended September 30, 2005, and year ended December 31, 2004 the Company will be increasing previously reported net earnings by $10.5 million ($.27 per diluted share) and $19.4 million ($.56 per diluted share), respectively. For the years ended December 31, 2003 and 2002, the Company will be decreasing net earnings by $4.2 million ($.15 per diluted share) and $2.6 million ($.09 per diluted share), respectively.

This statement and others like it, continued to conceal from investors the true magnitude of the Company's accounting improprieties.

6.      After obtaining numerous extensions to complete its restatement of financial results from the SEC and New York Stock Exchange ("NYSE"), the truth began to emerge on January 28, 2008, when MuniMae issued a press release announcing that the Company was cutting its quarterly dividend by 37%, from $0.5250 to $0.33 per share. In addition, the Company disclosed that it would not complete its restatement of financial

results by the March 3, 2008 deadline imposed by the NYSE, and therefore, Defendants expected the Company's stock to be delisted.

7.      On this news, the price of MuniMae stock dropped from $17.20 per share to close at $9.19 per share on January 29, 2007, representing a 47% single-day decline, on unusually heavy volume of 3,777,600 shares traded.

8.      Then, on January 29, 2008, MuniMae filed with the SEC a report on Form 8-K that provided additional details regarding the restatement, including the fact that the Company was required to consolidate on its balance sheet approximately 200 "variable interest entities" ("VIE") in which it holds minority interests, and the Company would be writing-down the fair value of impaired assets "held-for-sale" including loans, bonds, derivatives, guarantee obligations, and mortgage servicing rights.

9.      On this news, the price of MuniMae stock the stock dropped an additional 22%, to close at $7.13 per share on January 30, 2008, on unusually heavy volume of 4,128,200 shares traded.

10.     The Defendants' public statements regarding the financial condition and business of MuniMae were materially false and misleading and concealed from Plaintiff and the investing public that: (i) MuniMae's reported financial results were materially overstated as a result of Defendants' failure to consolidate on the Company's balance sheet approximately 200 VIEs in which it held minority interests, as required by generally accepted accounting principles ("GAAP"); (ii) MuniMae's reported financial results were materially overstated as a result of Defendants' failure to timely write-down the fair value of its "held-for-sale" loans, bonds, derivatives, guarantee obligations, and mortgage servicing rights; (iii) MuniMae's purported strong performance and earnings

growth was a sham; on the contrary, the Company was performing poorly and would be required to cut its dividends; (iv) MuniMae lacked adequate and effective internal controls and procedures over its financial reporting and, consequently, Defendants' assurances regarding the reliability of MuniMae's financial reporting and the preparation of financial statements in accordance with GAAP were materially false and misleading; (v) as a result of the foregoing, MuniMae's financial statements during the Class Period were materially false and misleading and violated GAAP and SEC Regulations.

11.     As alleged herein, the Defendants were highly motivated to commit fraud in order to artificially boost the prices of the Company's stock so that they could (i) obtain windfall profits for the Company on secondary stock and preferred stock offerings during the Class Period; (ii) use artificially inflated shares as currency to fund corporate acquisitions; and (iii) to improperly profit from insider stock sales.  Indeed, during the Class Period, while in possession of material adverse non-public information regarding the Company's true financial condition, Defendant Joseph sold approximately 179,815 personally held shares of MuniMae stock for proceeds of $4,680,854; Defendant Falcone sold approximately 48,095 shares of MuniMae stock for proceeds of $1,229,519; and Defendant Harrison sold approximately 43,000 shares of MuniMae stock for proceeds of $1,131,434.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331, 1337 and 1367.

13.    The claims alleged herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated under Section 10(b) (17 C.F.R. § 240.10b-5).

14.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) and (c).  Substantial acts in furtherance of the alleged fraud and/or its effects, including the preparation and dissemination to the investing public of materially false and misleading financial statements, occurred in this District. Additionally, the Company maintains a principal executive office in this Judicial District.

15.    In connection with the acts, omissions and other wrongs complained of herein, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities markets.

## THE PARTIES

16.    Plaintiff, Michael J. Cirrito, purchased the publicly traded common stock of MuniMae at artificially inflated prices during the Class Period, as set forth in the certification attached hereto, and have suffered damages as a result of the disclosure of the wrongful acts of Defendants as alleged herein.

17.    Defendant MuniMae is a Delaware limited liability company that maintains its corporate headquarters at 621 East Pratt Street, in Baltimore, Maryland. According to the Company's Form 10-K filed with the SEC on June 22, 2006, MuniMae has the same governance and management structures as a corporation, but it is treated as a "pass-through" entity for federal income tax purposes.  MuniMae conducts its business activities primarily through two wholly-owned subsidiaries: MMA Financial, Inc., which

338683.1 1

operates the Company's tax credit, taxable lending, and fee generating real estate finance activities; and MuniMae Holdings, LLC, which holds the majority of the Company's investments in tax exempt bonds.

18.     Defendant Falcone has been the CEO of MuniMae since January 1, 2005. Falcone has been a director of the Company since 1999, and was President and Chief Operating Officer of the Company from 1997 to January 2005.  According to a Form 8-K filed with the SEC on or about December 12, 2004, "Mr. Falcone is responsible for the operations of the Company, focusing on strategic planning and business development, as well as the management of the day-to-day activities of the Company."  Falcone reviewed, approved and signed certain of MuniMae's false and misleading SEC filings during the Class Period.

19.     Defendant Joseph was CEO of the Company from the beginning of the Class Period until he was replaced as CEO by Defendant Falcone on January 1, 2005. Joseph is, and was at all relevant times, the Chairman of the Company's Board of Directors (the "Board").  Joseph reviewed, approved and signed certain of MuniMae's false and misleading SEC filings during the Class Period.

20.     Defendant Harrison was Executive Vice President and CFO of the Company from the beginning of the Class Period until he resigned on or about December 15, 2005.  Harrison reviewed, approved and signed certain of MuniMae's false and misleading SEC filings during the Class Period.

21.     Defendant Lunquist was CFO of the Company from December 15, 2005 until her resignation on July 10, 2007.  Lundquist reviewed, approved and signed certain of MuniMae's false and misleading SEC filings during the Class Period.

22.     Defendant Pinckney was Chief Operating Officer of the Company at all relevant times during the Class Period and was the Company's CFO from July 10, 2007 to November 8, 2007, when he was replaced as CFO by Defendant Kay.  Pinckney reviewed, approved and signed certain of MuniMae's false and misleading SEC filings during the Class Period.

23.     Defendant Kay was the Company's CFO from November 8, 2007 to the end of the Class Period.  Kay reviewed, approved and signed certain of MuniMae's false and misleading SEC filings during the Class Period.

24.     During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of MuniMae, was privy to non-public information concerning the Company's business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

25.     Each of the above officers of MuniMae, by virtue of his/her high-level position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.  The Individual Defendants were involved in drafting, producing, reviewing

and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

26.     As officers and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and were traded on the NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

27.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with MuniMae, the Individual Defendants had access to the adverse undisclosed information about MuniMae's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these

338683.1 1

adverse facts rendered the positive representations made by or about MuniMae and its business issued or adopted by the Company materially false and misleading.

28.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

29.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MuniMae's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.   The scheme (i) deceived the investing public regarding MuniMae's business, operations, management and the intrinsic value of MuniMae's common stock; and (ii) caused Plaintiff and other members of the Class to purchase MuniMae's common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

30.     The Class Period begins on May 3, 2004, when MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Harrison, that included as an exhibit the full text of the press release, trumpeting the Company's "***29th Consecutive Increase in Distributions***."  (Emphasis in original.)  In

338683.1 1

addition, the Company reported the following financial results for the first quarter of

2004, *inter alia*, stating:

> MuniMae[] reported net income allocated to common shares of $1.2 million for the quarter ended March 31, 2004 compared to $13.9 million for the same period in 2003. Diluted earnings per share were 0.04 for the quarter, compared to $0.50 for the same period in 2003.

> The Company reported Cash Available for Distribution ("CAD") per common share of $0.37 for the quarter ended March 31, 2004, a decrease of 26% as compared with CAD per common share of $0.50 for the same period in 2003. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. CAD differs from net income because of variations between GAAP income and actual cash received. These variations are described in the note to the attached calculation of CAD statement.)

31.     Commenting on these results, Defendant Joseph stated:

> We are very pleased with the Company's results for the first quarter. As we had previously advised our investors, we expected first quarter results to come in below the prior-year figures due to seasonality in our tax credit equity syndication business, which we significantly expanded through a July 2003 acquisition. While our CAD per share for the first quarter of 2004 did come in below the prior-year results, it significantly exceeded our expectations. This was largely due to strong results in our tax credit equity unit during the quarter. Based in part on the Company's results and our outlook for the remainder of the year, our Board of Directors recently raised the quarterly distribution to holders of our common shares to $0.4575, an increase of 3% over the same period in 2003.

32.     On May 4, 2004, MuniMae filed with the SEC a quarterly report on Form

10-Q for the quarter ended March 31, 2004 (the "First Quarter 2004 10-Q"), signed by

Defendants Joseph and Harrison.  The First Quarter 2004 10-Q reiterated the financial

results reported in the May 3, 2004 press release and Form 8-K.  Pursuant to the

Sarbanes-Oxley Act of 2002, Defendants Joseph and Harrison certified that the First

Quarter 2004 10-Q did not contain any false or misleading statements of material fact or

fail to disclose any material facts and fairly presented the Company's financial results and condition, as follows:

1.      I have reviewed this quarterly report on Form 10-Q of Municipal Mortgage & Equity, LLC;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

(a)      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or person performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

33.     In addition, Defendants Joseph and Harrison certified the First Quarter 2004 10-Q pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, as follows:

The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

34.     On August 2, 2004, MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Harrison, that included as an exhibit the full text of the press release, trumpeting "***Its 30th Consecutive Increase in Distribution***." (Emphasis in original.) In addition, the Company reported the following financial results for the second quarter of 2004, *inter alia*, stating:

MuniMae[] reported net income allocated to common shares of $11.2 million for the quarter ended June 30, 2004 compared to $31.1 million for the same period in 2003. Diluted earnings per share were $0.32 for the quarter, compared to $1.06 for the same period in 2003.

The Company reported Cash Available for Distribution ("CAD") per common share of $0.61 for the quarter ended June 30, 2004, an increase of 17% as compared with CAD per common share of $0.52 for the same period in 2003. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. The differences between GAAP and CAD are described in the note to the attached calculation of CAD statement.)

35.     Commenting on these results, Defendant Joseph stated:

We are extremely pleased to have been able to raise our distribution for thirty consecutive quarters. So far this year we are outperforming our own

and analysts' expectations, particularly in our tax credit equity business, and we expect to finish the year somewhere between 2 and 4 percent above analyst current consensus expectations of $2.22.

36.     On September 23, 2004, MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Harrison, that included as an exhibit the full text of the press release, trumpeting that the "***Company Continues Growth with 31st Consecutive [Dividend] Increase***."   (Emphasis in original.)   In addition, the Company reported the following:

> MuniMae, announced today that its Board of Directors raised the quarterly distribution to $0.4675 per common share, an increase of 3.9 % over the same period in 2003.
>
> *          *          *
>
> MuniMae's third quarter distribution to common shareholders of $0.4675 annualizes to $1.87 per share. Based on the September 22, 2004 closing share price of $25.00, MuniMae common shares have an annualized yield to shareholders of 7.5%.

37.     Commenting on these results, Defendant Joseph stated:

> We are pleased with the Company's continued progress against its fiscal 2004 production and financial targets, and in view [of] the same are announcing the 31st consecutive increase in our distribution to common shares. Over the past year, we have significantly increased our dividend growth rate, from 2.3% to 3.9%. We continue to focus on providing the highest levels of service to our developer and investor clients while striving to maintain consistently superior returns to our shareholders.

38.     On November 10, 2004, MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Harrison, that included as an exhibit the full text of the press release, highlighting "***CAD per Common Share Increases 36%.***"   (Emphasis in original.)   In addition, MuniMae reported its financial results for the third quarter of 2004, *inter alia*, stating:

> MuniMae, reported net income of $11.6 million for the quarter ended September 30, 2004, as compared to $18.1 million for the same period in

2003. Diluted earnings per share were $0.33 for the quarter, compared to $0.62 for the same period in 2003.

The Company reported Cash Available for Distribution ("CAD") per common share of $0.72 for the quarter ended September 30, 2004, an increase of 36% as compared with CAD per common share of $0.53 for the same period in 2003. (The Company uses CAD as its primary measure of performance and believes it to be illustrative of its distribution-paying ability. The differences between GAAP and CAD are described in the note to the attached calculation of CAD statement.)

39.     Commenting on these results, Defendant Joseph stated:

MuniMae is pleased to continue its long history of steady growth in cash generated by our businesses. The Company has recently declared its 31st consecutive increase in its distribution to common shareholders. Despite higher regulatory and compliance costs, particularly those related to the Sarbanes-Oxley Act of 2002 our management team continues to deliver strong results.

40.     On March 16, 2005, MuniMae issued a press release reporting the Company's financial results for the fourth quarter of 2004 and full year 2004, and concurrently filed with the SEC a report on Form 8-K signed by Defendant Harrison, in which Defendants represented that the Company had adopted, implemented, and was in compliance with Financial Accounting Standards Board Interpretation Number 46R ("FIN 46R"), which requires consolidation of entities in which MuniMae has partnership interests, *inter alia*, stating:

As previously reported, the Company adopted FASB Interpretation No. 46R, "Consolidation of Variable Interest Entities" effective March 31, 2004, which required us to consolidate certain tax credit equity funds in which we have a 1% or less general partnership interest. As a result of consolidating these funds, syndication and certain other fees earned on these funds have been eliminated. These changes, coupled with financing accounting required for guaranteed tax credit equity funds, make the year over year comparisons difficult. Accordingly, we have presented adjusted amounts in an effort to improve comparability as between 2004 and 2003. These amounts are not in accordance with generally accepted accounting principles. It should be noted that, due to other significant changes in the

Company's business and other new accounting principles, even these adjusted figures are not fully comparable.

41.     With respect to results of operations, the March 16, 2005 press release

reported a 55% increase in net income for the fourth quarter of 2004, *inter alia*, stating:

> For the three and twelve months ended December 31, 2004, MuniMae earned net income of approximately $5.6 million and $27.0 million, respectively, down from $9.3 million and $72.5 million for the three and twelve months ended December 31, 2003, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, MuniMae earned net income of $21.8 million and $61.1 million for the three and twelve months ended December 31, 2004, respectively, representing an increase of approximately 55% over similarly adjusted GAAP net income for the three months ended December 31, 2003 and a decrease of 17% for the twelve months ended December 31, 2003.
>
> On a diluted per share basis, net income was $0.16 and $0.78 for the three and twelve months ended December 31, 2004, respectively, down from $0.28 and $2.44 for the three months and twelve months ended December 31, 2003, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, diluted net income per common share was $0.62 and $1.76 for the three months and twelve months ended December 21, 2004, respectively, which represents an increase of 44% from the similarly adjusted $0.43 per share for the three months ended December 31, 2003 and a 29% decrease from the $2.47 per share for the twelve months ended December 31, 2003.
>
> MuniMae's net income results reflect gains of $11.1 million and $25.7 million from property dispositions accounted for as discontinued operations in 2004 and 2003, respectively. Adjusted to exclude the impact of these property dispositions, the consolidation of certain tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, net income was $21.6 million and $50.0 million for the three and twelve months ended December 31, 2004, respectively, which represents increases of approximately 53% and 5% as compared to adjusted net income of approximately $14.1 million and $47.9 million for the three months and twelve months ended December 31, 2003, respectively. These gains were derived from dispositions of underperforming assets that MuniMae was able to sell at attractive valuations due to favorable real estate market conditions. The proceeds from the sales allowed us to recapture all our invested capital, recoup back

interest payments, realize gains on both properties, and improve the credit quality of our portfolio.

CAD Results of Operations

For the three and twelve months ended December 31, 2004, MuniMae's CAD, a performance measure, was $22.2 million and $81.7 million, respectively. MuniMae's 2004 CAD results represent increases of approximately 17% and 28%, as compared with $19.0 million and $63.8 million for the three and twelve months ended December 31, 2003, respectively. On a per share basis, CAD was $0.63 and $2.33 for the three and twelve months ended December 31, 2004, respectively, representing increases of approximately 9% as compared to $0.58 and $2.13 for the three and twelve months ended December 31, 2003, respectively.

MuniMae's fourth quarter distribution to common shareholders of $0.4725 annualized to $1.89 per share, a 4.4% increase over the annualized dividend for the fourth quarter of 2003. Based on the March 15, 2005 closing share price of $24.55, MuniMae common shares have an annualized yield to shareholders of 7.7%. Based on the assumption that the company's net income is 75% to 80% exempt from Federal income tax, absent the impact of capital gains (which impact shareholders differently depending on when they purchased their shares), the taxable-equivalent yield would be 10.8% to 11.1%(1).

Based upon the dividends paid in 2004, MuniMae has a CAD payout ratio of 80%, down from 86% in 2003. Driving down this ratio provides additional security for distributions to common shareholders and allows the Company to finance more of its growth through internally generated funds.

42.    Commenting on these results, Defendant Falcone stated:

By capitalizing on the synergies between our tax credit business and our tax-exempt and taxable lending businesses, we successfully structured over $2.5 billion in multifamily and other real estate investments, which is a 68% increase over 2003 production … As a result, our Cash Available for Distribution ("CAD") per common share grew 9% over 2003, representing our 8th consecutive year of CAD per share growth.

43.    On or about March 16, 2005, MuniMae filed with the SEC its annual

report on Form 10-K, signed by Defendants Falcone, Joseph, and Harrison (the "2004 10-K"). Defendants Falcone and Harrison certified the 2004 10-K pursuant to the Sarbanes-

Oxley Act of 2002 by signing certifications that were substantially identical to their certifications of the First Quarter 2004 10-Q. The 2004 10-K reiterated the financial results reported in the March 16, 2005 press release.

44.     Under the heading "New Accounting Pronouncements," the 2004 10-K represented that the Company had adopted, implemented, and was in compliance with FIN 46R, which required MuniMae to consolidate on its balance sheet certain VIEs and other off-balance sheet arrangements, *inter alia*, stating:

> In January 2003, the FASB approved FIN 46 which requires the consolidation of a company's equity investment in a [variable interest entity ("VIE")] if the company is the primary beneficiary of the VIE and if risks are not effectively dispersed among the owners of the VIE. The Company is considered to be the primary beneficiary of the VIE if the company absorbs the majority of the "expected losses" of the VIE as defined in the pronouncement. FIN 46 is effective for VIEs created after January 31, 2003. **For any VIE in which the Company held an interest that it acquired before February 1, 2003, FIN 46 was effective for the first interim reporting period beginning after June 15, 2003.** In December 2003, FASB approved various amendments to FIN 46 and released FIN 46R. In addition, FASB extended the effective date of FIN 46 until the first reporting period ending after March 15, 2004 for VIEs which are not special purpose entities, and the Company elected to defer adoption of that portion of FIN 46 until that time.
>
> *        *        *
>
> As further discussed in "New Accounting Pronouncements," **FIN 46R requires, in some cases, consolidation of certain tax credit equity funds. As a result of the adoption of FIN 46R, the Company consolidated certain tax credit equity funds at March 31, 2004**. The Company is the general partner in these funds and the Company's interests typically represent a one percent or less interest in each fund. For those funds which it consolidates, the Company reports the net assets of the funds, consisting primarily of restricted cash, investments in real estate partnerships and notes payable, in the Company's consolidated balance sheet. In addition, the limited partnership interests in the funds, owned by third party investors, are reported as a minority interest. The net income (loss) from these tax credit equity funds is reported in the appropriate line items of the Company's consolidated statement of income. An adjustment for the income (loss) allocable to the limited partners (investors) in the

funds is recorded through minority interest expense (income) in the Company's consolidated statement of income.

(Emphasis added.)

45.     On April 21, 2005, MuniMae issued a press release announcing that the

Board had declared a $0.4775 dividend for the first quarter of 2005, *inter alia*, stating:

> MuniMae … announced today that its Board of Directors has declared a distribution of $0.4775 per share for the first quarter of 2005, payable on May 13, 2005, to shareholders of record as of May 2, 2005.
>
> MuniMae's first quarter distribution equates to $1.91 per share on an annualized basis, representing a 8% annualized yield based on the $23.78 per share closing price on April 20, 2005.

46.     On May 2, 2005, MuniMae issued a press release entitled, "MuniMae

Reports a 14% Year-Over-Year Increase in Cash Available for Distribution 'CAD' per

Share," and concurrently filed with the SEC a report on Form 8-K, signed by Defendant

Harrison, that included as an exhibit the full text of the press release.  The May 2, 2005

press release touted another increase in quarterly dividends and reported MuniMae's

financial results for the first quarter of 2005, *inter alia*, stating:

> For the three months ended March 31, 2005, MuniMae's net income was $2.2 million, up from a net loss of $1.3 million for the three months ended March 31, 2004. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, MuniMae's net income was $12.7 million for the three months ended March 31, 2005, representing an increase of 208% over similarly adjusted GAAP net income for the same period in 2004.
>
> On a diluted per share basis, earnings per share was $0.06 for the three months ended March 31, 2005, as compared with a loss of $0.04 for the three months ended March 31, 2004. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, diluted earnings per common share was $0.34 for the three months ended March 31, 2005, which represents an increase of 183% from the similarly adjusted earnings per share for the same period in 2004.

\*         \*         \*

CAD Results of Operations

For the three months ended March 31, 2005, MuniMae's Cash Available for Distribution ("CAD"), a performance measure, was $16.1 million, representing an increase of approximately 24% as compared to $13.0 million for the three months ended March 31, 2004. On a per share basis, CAD was $0.42 for the three months ended March 31, 2005, representing an increase of approximately 14% as compared to $0.37 for the three months ended March 31, 2004.

MuniMae's 2005 first quarter distribution to common shareholders of $0.4775 annualizes to $1.91 per share, a 4% increase over the annualized distribution of $1.83 for the first quarter of 2004. Based on the April 29, 2005 closing share price of $24.04, MuniMae common shares have an annualized yield to shareholders of 7.95%. Based on the assumption that 75% to 80% of the Company's net income is exempt from federal income tax, absent the impact of capital gains (which affects shareholders differently depending on when they purchased their shares), the taxable-equivalent yield would be 11.15% to 11.37%(1).

Based upon the first quarter distribution for 2005, MuniMae has a CAD payout ratio of 113%, down from 123% in 2004. Given the growth in MuniMae's operating businesses, there is seasonality to both CAD and GAAP earnings that results in the distribution for the first quarter being higher than CAD earnings.

47.    Commenting on these results, Defendant Falcone stated:

We had a productive first quarter and remain on track to meet our overall earnings per share and CAD per share targets for fiscal year 2005. Our business volumes continue to grow in our major business segments. In addition, during the quarter we completed a successful public offering of common equity and a private placement of subsidiary trust preferred securities, which together raised $118 million of capital. Finally, we closed a small but strategically important acquisition of an established business, which we have re-branded MMA Realty Capital and which we expect to form the cornerstone of an expanded fund management business targeting pension funds, insurance companies and other institutional investors.

48.    In addition to the foregoing, the May 2, 2005 press release represented that the Company had adopted, implemented, and was in compliance with FIN 46R, which

required MuniMae to consolidate on its balance sheet certain VIEs and other off-balance

sheet arrangements, *inter alia*, stating:

> As previously reported, the Company adopted FASB Interpretation No.
> 46R, "Consolidation of Variable Interest Entities" effective March 31,
> 2004, which required it to consolidate certain tax credit equity funds in
> which it had a 1% or less general partnership interest. As a result of
> consolidating these funds, syndication and certain other fees earned on
> these funds have been eliminated. These changes, coupled with financing
> accounting required for guaranteed tax credit equity funds, make the year
> over year comparisons difficult. Accordingly, the Company has presented
> the adjusted amounts above in an effort to improve comparability as
> between 2005 and 2004. These amounts are not in accordance with
> generally accepted accounting principles. It should be noted that, due to
> other significant changes in the Company's business and other new
> accounting principles, even these adjusted figures are not fully
> comparable.

49.     On May 9, 2005, MuniMae filed with the SEC a quarterly report on Form

10-Q for the quarter ended March 31, 2005 (the "First Quarter 2005 10-Q").  The First

Quarter 2005 10-Q was signed by Defendant Harrison and reiterated the financial results

reported in the Company's May 3, 2005 press release and Form 8-K.  Defendants Falcone

and Harrison certified the First Quarter 2005 10-Q pursuant to the Sarbanes-Oxley Act of

2002 by signing certifications that were substantially identical to their certifications of the

First Quarter 2004 10-Q.

50.     On July 21, 2005, MuniMae issued a press release entitled "Company

Continues Growth with 34th Consecutive Increase in Distribution," in which Defendants

touted another increase in quarterly dividends, *inter alia*, stating:

> MuniMae … announced today that its Board of Directors has declared a
> distribution of $0.4825 per share for the second quarter of 2005, payable
> on August 12, 2005, to shareholders of record as of August 1, 2005.
>
> MuniMae's second quarter distribution equates to $1.93 per share on an
> annualized basis, representing a 7.3% annualized yield based on the
> $26.45 per share closing price on July 21, 2005.

338683.1 1

51.     On July 28, 2005, MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Harrison, that included as an exhibit the full text of the press release, announcing the Company's financial results for the second quarter of 2005, *inter alia*, stating:

> MuniMae … today announced financial results for the second fiscal quarter. For the quarter, the Company reported GAAP diluted earnings per share, excluding the effects of FIN 46 and FAS 66, of $0.58, an increase of 5% over the $0.55 per share for the second quarter of 2004. The Company reported Cash Available for Distribution, or CAD, for the second quarter of $0.55 per share, a decrease of 10% as compared with CAD per share of $0.61 for the second quarter of 2004.
>
> \*       \*       \*
>
> GAAP Results of Operations
>
> For the three and six months ended June 30, 2005, MuniMae's net income was $23.6 million and $25.8 million, which represents an increase of 111% and 161% over net income for the three and six months ended June 30, 2004, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and real estate operating partnerships as a result of the application of FIN 46 and the financing method of accounting related to guaranteed tax credit equity funds due to FAS 66, MuniMae's net income was $22.1 million and $34.6 million for the three and six months ended June 30, 2005, respectively, representing an increase of 15% and 48% over similarly adjusted net income for the same periods in 2004.
>
> On a diluted per share basis, net income was $0.61 and $0.68 for the three and six months ended June 30, 2005, which represents an increase of 91% and 135% over net income for the three and six months ended June 30, 2004, respectively. Adjusted to exclude the impact of certain consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, diluted earnings per common share were $0.58 and $0.91 for the three and six months ended June 30, 2005, representing increases of 5% and 34% over the similarly adjusted earnings per share for the same periods in 2004.
>
> As previously reported, the Company adopted FASB Interpretation No. 46R, "Consolidation of Variable Interest Entities" (FIN 46) effective March 31, 2004. FIN 46 required the Company to consolidate certain tax credit equity funds in which it had a 1% or less general partnership

interest. As a result of consolidating these funds, syndication and certain other fees earned on these funds have been eliminated. These changes, coupled with financing accounting required for guaranteed tax credit equity funds, make year-over-year comparisons difficult. Accordingly, the Company has presented the adjusted amounts above in an effort to improve comparability as between 2005 and 2004. These amounts are not in accordance with generally accepted accounting principles. It should be noted that, due to other significant changes in the Company's business and other new accounting principles, even these adjusted figures are not fully comparable.

CAD Results of Operations

For the three and six months ended June 30, 2005, MuniMae's CAD to common shares, a performance measure, was $21.0 million and $37.1 million as compared to $21.3 million and $34.3 million for the three and six months ended June 30, 2004, respectively. On a per share basis, CAD was $0.55 and $0.98 for the three and six months ended June 30, 2005, as compared to $0.61 and $0.98 for the three and six months ended June 30, 2004, respectively.

MuniMae's 2005 second quarter distribution to common shareholders of $0.4825 annualizes to $1.93 per share, a 4% increase over the annualized distribution of $1.85 for the second quarter of 2004. Based on the July 27, 2005 closing share price of $26.82, MuniMae common shares have an annualized yield to shareholders of 7.2%. Based on the assumption that 75% to 80% of the Company's net income is exempt from federal income tax, absent the impact of capital gains (which affects shareholders differently depending on when they purchased their shares), the taxable-equivalent yield would be 10.1% to 10.3%(1).

MuniMae's CAD payout ratio for the three months ended June 30, 2005 was 87.2%, as compared to 75.7% for the same period in 2004. On a rolling twelve-month basis, the CAD payout ratio was 82.2% for the period ending June 30, 2005.

52.    Commenting on these results, Defendant Falcone stated:

MuniMae had a productive second quarter and, though our year-to-date CAD per share is essentially flat as compared with the first half of 2004, it was above our internal budget. Moreover, based on a review of our pipeline and business prospects for the remainder of the year, we are on track to meet or slightly exceed the current analysts' consensus CAD estimate of $2.41 for fiscal 2005.

We are increasingly seeing the benefits of the diversification strategy we have pursued for the past six years. While the persistent low interest rate environment is causing pricing pressure in some of our business lines, particularly in our tax-exempt bond business, we are simultaneously benefiting from a strong seller's market for multifamily properties, and we are seeking to take advantage of this market to harvest significant gains on some of our equity investments and bonds. The regular realization of gains on sale has been part of our overall business plan for several years, and the pricing we have seen this year has generally met or exceeded our going-in return expectations for these investments. We remain committed to our strategy of diversifying our product offerings while building scale, both through acquisitions and through organic growth in our existing businesses. In this connection, we are very pleased to have closed the Glaser Financial acquisition, which gives us new product capabilities, additional scale in our DUS lending franchise, geographic diversification in our loan servicing portfolio and a strong management team.

53.     On August 4, 2005, MuniMae filed with the SEC a quarterly report on Form 10-Q for the quarter ended June 30, 2005 (the "Second Quarter 2005 10-Q").   The Second Quarter 2005 10-Q was signed by Defendant Harrison and reiterated the financial results reported in the Company's July 28, 2005 press release and Form 8-K.  Defendants Falcone and Harrison certified the Second Quarter 2005 10-Q pursuant to the Sarbanes-Oxley Act of 2002 by signing certifications that were substantially identical to their certifications of the First Quarter 2004 10-Q.

54.     On October 21, 2005, MuniMae issued a press release touting the Company's "**35th Consecutive Increase in Distribution**," (emphasis in original), *inter alia*, stating:

MuniMae … announced today that its Board of Directors has declared a distribution of $0.4875 per common share for the third quarter of 2005, payable on November 11, 2005, to shareholders of record as of October 31, 2005.

MuniMae's third quarter distribution equates to $1.95 per common share on an annualized basis, representing an 8.0% annualized yield based on the $24.50 per share closing price on October 20, 2005.

55.     On November 7, 2005, MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Harrison, that included as an exhibit the full text of the press release, announcing the Company's financial results for the third quarter of 2005, *inter alia*, stating:

> MuniMae … today announced financial results for the third fiscal quarter of 2005.
>
> The Company reported diluted earnings per share of $0.52 and $1.21 for the three and nine months ended September 30, 2005, representing an increase of 58% and 95%, respectively, over diluted earnings per share for the comparable periods in 2004. In addition, the Company reported Cash Available for Distribution, or CAD, of $0.76 and $1.73 per share for the three and nine months ended September 30, 2005, representing increases of 6% and 2%, respectively, over CAD per share for the comparable periods in 2004.
>
> The distribution of $0.4875 per common share, payable on November 11, 2005, to shareholders of record as of October 31, 2005, marked a record 35th consecutive increase in the Company's quarterly distribution and represents an 8% annualized yield based on the $24.22 per share closing price on November 7, 2005.
>
>          \*      \*      \*
>
> Net Income and Adjusted Net Income
>
> For the three months ended September 30, 2005, net income was $20.4 million, representing a 77% increase over net income for the same period in 2004. Adjusted to exclude the impact of consolidated tax credit equity funds and real estate operating partnerships as a result of the application of FIN 46R and the financing method of accounting related to guaranteed tax credit equity funds due to FAS 66, net income was $23.9 million for the three months ended September 30, 2005, representing a 52% increase over similarly adjusted net income for the same period in 2004.
>
> Diluted earnings per share totaled $0.52 for the three months ended September 30, 2005, representing a 58% increase over diluted earnings per share for the same period in 2004. Adjusted to exclude the impact of consolidated tax credit equity funds and the financing method of accounting related to guaranteed tax credit equity funds, diluted earnings per share was $0.62 for the three months ended September 30, 2005, representing a 38% increase over the similarly adjusted earnings per share for the same period in 2004.

As previously reported, the Company adopted FASB Interpretation No. 46R, "Consolidation of Variable Interest Entities" (FIN 46) effective March 31, 2004. FIN 46R required the Company to consolidate certain tax credit equity funds in which it had a 1% or less general partnership interest. As a result of consolidating these funds, syndication and certain other fees earned on these funds have been eliminated. These changes, coupled with financing accounting required for guaranteed tax credit equity funds, make year-over-year comparisons difficult. Accordingly, the Company has presented the adjusted amounts above in an effort to improve comparability as between 2005 and 2004. These amounts are not in accordance with generally accepted accounting principles.

CAD Results of Operations

For the three months ended September 30, 2005, CAD, a non-GAAP performance measure, was $28.8 million as compared to $25.2 million for the same period in 2004. On a per share basis, CAD was $0.76 for the three months ended September 30, 2005, as compared to $0.72 for the same period in 2004.

Quarterly Distribution and Payout Ratio

The Company's November 2005 distribution to common shareholders of $0.4875 per share annualizes to $1.95 per share, a 4% increase over the November 2004 annualized distribution of $1.87 per share. Based on the November 7, 2005 closing share price of $24.22, MuniMae common shares have an annualized yield to shareholders of 8%. Based on the assumption that 75% to 80% of the Company's net income is exempt from federal income tax, absent the impact of capital gains (which affects shareholders differently depending on when they purchased their shares), the taxable-equivalent yield would be 11.3% to 11.5%(2).

MuniMae's CAD payout ratio for the three months ended September 30, 2005 was 64.4%, as compared to 65.1% for the same period in 2004. On a rolling twelve-month basis, the CAD payout ratio was 81.3% for the period ending September 30, 2005, as compared with 80.5% for the twelve months ended September 30, 2004.

56.    Commenting on these results, Defendant Falcone stated:

Although our tax-exempt bond originations in 2005 have fallen significantly below 2004 levels, production volumes remain strong in our other lines of business, and the continued low interest rate environment has enabled us to sell selected investments at very attractive cap rates. We remain confident in our outlook for the rest of the year, and based on our

338683.1 1

current pipeline, we expect CAD per share for the fiscal year 2005 to be at least $2.43.

57.     On November 9, 2005, MuniMae filed with the SEC a quarterly report on Form 10-Q for the quarter ended September 30, 2005 (the "Third Quarter 2005 10-Q"). The Third Quarter 2005 10-Q was signed by Defendant Harrison and reiterated the financial results reported in the Company's November 7, 2005 press release and Form 8-K. Defendants Falcone and Harrison certified the Third Quarter 2005 10-Q pursuant to the Sarbanes-Oxley Act of 2002 by signing certifications that were substantially identical to their certifications of the First Quarter 2004 10-Q.

58.     On January 20, 2006, MuniMae issued a press release entitled, "MuniMae Announces 36th Consecutive Increase in Quarterly Distribution," in which Defendants touted another increase in quarterly dividends, *inter alia*, stating:

> MuniMae … announced that its Board of Directors yesterday declared a distribution of $0.4925 per common share payable on February 10, 2006, to shareholders of record as of January 30, 2006. This represents an increase of 4.2% over the distribution for the comparable period last year. On an annualized basis, the distribution equates to $1.97 per common share and represents a 7.3% yield based on the January 19, 2006 closing price of $26.83 per share. The stated yield does not give effect to any tax savings investors may realize from the portion of the distribution that is exempt from Federal income taxes. The Company also announced a reorganization of its operations designed to improve profitability and enhance shareholder value in 2006 and beyond.

59.     Commenting on this increase in quarterly distributions, Defendant Falcone stated:

> Financial performance was very strong in 2005, and we are pleased to again increase the distribution to our common shareholders. During the year, production was more than $1 billion ahead of 2004 as a result of acquisitions and organic growth. We also raised approximately $1.3 billion in tax credit equity, a record for the Company and an increase of 18% over the prior year. We are optimistic about our growth prospects for 2006.

60.     The Defendants' statements in paragraphs 30-59 were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts: (i) MuniMae's reported financial results were materially overstated as a result of Defendants' failure to consolidate on the Company's balance sheet hundreds of VIEs in which MuniMae held minority interests, as required by GAAP; (ii) MuniMae's reported financial results were materially overstated as a result of Defendants' failure to timely write-down the fair value of impaired assets "held-for-sale" including loans, bonds, derivatives, guarantee obligations, and mortgage servicing rights; (iii) MuniMae's purported strong performance and earnings growth was a sham; on the contrary, the Company was performing poorly and would be required to cut its dividends; (iv) MuniMae lacked adequate and effective internal controls and procedures over its financial reporting and consequently, Defendants' certifications and other assurances regarding the reliability of MuniMae's financial reporting and the preparation of financial statements in accordance with GAAP were materially false and misleading; (v) as a result of the foregoing, MuniMae's financial statements during the Class Period were materially false and misleading and violated GAAP and SEC Regulations.

61.     On March 10, 2006, MuniMae issued a press release disclosing that the Company would be restating more than three years of earnings and that the Company would delay the filing of its Form 10-K for fiscal 2005.  The full text of this press release was included as an exhibit to a Form 8-K signed by Defendant Lundquist, filed with SEC on March 16, 2006.  The March 10, 2006 press release, *inter alia*, stated:

> MuniMae … announced today that it will restate net earnings for the nine
> month period ended September 30, 2005 as well as fiscal years 2004, 2003
> and 2002 resulting in higher aggregated net earnings over this period than

previously reported. This restatement does not impact cash available for distribution (CAD) in any period. CAD is a supplemental non-GAAP performance measure reported by the Company in addition to net earnings.

For the nine months ended September 30, 2005, and year ended December 31, 2004 the Company will be increasing previously reported net earnings by $10.5 million ($.27 per diluted share) and $19.4 million ($.56 per diluted share), respectively. For the years ended December 31, 2003 and 2002, the Company will be decreasing net earnings by $4.2 million ($.15 per diluted share) and $2.6 million ($.09 per diluted share), respectively. The adjustments described above are subject to the completion of the review by the Company's independent registered public accountants.

In connection with its fourth quarter financial reporting processes, the Company identified the need to record certain adjustments related to four main areas: 1) recognition of syndication fees, 2) application of equity method accounting, 3) recognition of interest income, and 4) amortization of mortgage servicing rights. As a result of the efforts necessary to reflect the restatements of prior periods, the Company expects to file for a 15 day extension to file its annual report on Form 10-K for the year ended December 31, 2005. Currently, the Company expects that it will file its 2005 Form 10-K before the expiration of this extension.

62.     The Defendants' statements in the preceding paragraph were materially false and misleading because they concealed from Plaintiff and the investing public the true magnitude of the Company's accounting improprieties and created the impression that this restatement would serve to correct all prior errors in the Company's previously released financial statements when, in fact, the Company's financial statements continued to overstate its financial results and misrepresent its prospects, in violation of GAAP.

63.     On April 11, 2006, MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Lundquist, that included as an exhibit the full text of the press release, announcing the Company's financial results for the first quarter of 2006.  The April 11, 2006 press release touted the Company's 36th

consecutive increase in quarterly dividends, and   the closing of two corporate

acquisitions, *inter alia*, stating:

> MuniMae … today announced unaudited financial results for the fourth quarter and full year 2005. Net earnings were $16.1 million ($.42 per diluted share) for the three months ended December 31, 2005, as compared to $17.1 million ($.48 per diluted share) for the fourth quarter of 2004, as restated. For the full year, net earnings were $85.8 million ($2.24 per diluted share) in 2005, as compared to $50.9 million ($1.46 per diluted share) in 2004, as restated. Cash available for distribution (CAD) was $29.8 million for the quarter and $95.7 million for the year ended December 31, 2005, an increase of 34% and 17%, respectively over the comparable amounts for 2004. On a per share basis, CAD was $.78 for the three months ended December 31, 2005, an increase of 24% over the fourth quarter of 2004. For the full year, CAD per share was a record $2.51, an increase of 8% over 2004 results. A reconciliation of CAD to net earnings is included in the accompanying financial table. The financial results described above are subject to the completion of the audit by the Company's independent registered public accountants, and are therefore subject to change.

> 2005 Highlights

> -- Closed $77 million of acquisitions.

> -- Originated $3.8 billion of new investments, an increase of $1.2 billion and 49% ahead of 2004 production.

> -- Increased tax credit equity syndications 15% to $1.3 billion making MuniMae the largest sponsor of tax credit equity investments in the United States.

> -- Generated $135 million of fee revenue (on a CAD basis), a 28% increase over 2004.

> -- Raised more than $250 million of capital through balanced issuances of common stock and preferred shares.

> In recognition of these outstanding achievements, the Company's Board of Directors approved the 36th consecutive increase in the quarterly distribution that was paid to shareholders on February 10, 2006. The distribution of $.4925 per share represents a 4% increase from the comparable distribution last year. On an annualized basis, the distribution equates to $1.97 per common share and represents a 7.5% yield based on the April 10, 2006 closing price of $26.35 per share. The stated yield does

not give effect to any tax savings investors may realize from the portion of the distribution that is exempt from Federal income taxes.

64.     Commenting on the Company's purported "strong performance" for the quarter, Defendant Falcone stated:

> We accomplished a great deal in 2005. We closed the acquisitions of MONY Realty Capital and Glaser Financial which significantly expanded the mortgage banking products we offer as well as the services we can provide to institutional investors. In addition, we reorganized our operations to improve profitability and client service for many years to come. With greater diversity of revenue sources, a more efficient operating platform and a distribution that represents a lower percentage of CAD, MuniMae is well positioned for continued growth over the long-term.

65.     On May 4, 2006, the Company issued a press release trumpeting its "37th Consecutive Increase in Quarterly Distribution," *inter alia*, stating:

> MuniMae … announced today that its Board of Directors declared a distribution of $0.4975 per common share payable on May 23, 2006, to shareholders of record as of May 10, 2006. This represents an increase of 4.2% over the distribution for the comparable period last year. On an annualized basis, the distribution equates to $1.99 per common share and represents a 7.4% yield based on the May 3, 2006 closing price of $26.95 per share. The stated yield does not take into account any higher net return investors may realize as compared with other investments because a portion of the distribution is exempt from Federal income taxes.

66.     On June 22, 2006, MuniMae issued a press release announcing its financial results for the fourth quarter and full year 2005, in which Defendants highlighted the Company's purported strong growth in earnings and the filing of the Company's annual report on Form 10-K for 2005, *inter alia*, stating:

> MuniMae … today filed its annual report on Form 10-K for the year ended December 31, 2005. On March 10, 2006, the Company announced that it would restate net earnings for the nine-month period ended September 30, 2005 as well as the fiscal years ended 2004, 2003, 2002 and 2001. On April 11, 2006, the Company announced unaudited financial results for the fourth quarter and full year 2005.

338683.1 1

As disclosed in today's filing, net earnings were $87.4 million ($2.30 per diluted share) for the year ended December 31, 2005 as compared to $47.3 million ($1.36 per diluted share) for the year ended December 31, 2004, as restated. Net earnings for the fourth quarter of 2005 were $14.2 million ($.37 per diluted share) as compared to $15.1 million ($.43 per diluted share) for the fourth quarter of 2004, as restated. Previously reported cash available for distribution (CAD) for the fourth quarter and full year 2005 was unchanged. CAD is a supplemental non-GAAP performance measure reported by the Company in addition to net earnings. A reconciliation of CAD to net earnings is included in the accompanying table. The Company also reaffirmed its performance objectives for 2006.

67.     Also on June 22, 2006, MuniMae filed with the SEC its annual report on Form 10-K for the year ended December 31, 2005 (the "2005 10-K"), which was signed by Defendants Falcone, Lundquist, and Joseph.

68.     The 2005 10-K represented that the Company had taken the necessary steps to adopt, implement and comply with the requirements for determining whether to consolidate the Company's interests in certain VIEs pursuant to FIN 46R, *inter alia*, stating:

Financial Accounting Standards Board's Financial Interpretations No. 46 (Revised), "Consolidation of Variable Interest Entities" (" FIN 46 "), requires the consolidation of a VIE if we are the primary beneficiary of the VIE. Typically we are considered the primary beneficiary if our variable interest either absorbs a majority of the VIE's expected losses, receives a majority of the VIE's residual returns or both. Generally, FIN 46 impacts our accounting treatment for the following types of equity investments:

•     residual interests in bond securitization trusts

•     interests in income-producing real estate operating partnerships

•     interests in tax credit equity funds

•     interests in Project Partnerships

•     interests in managed real estate investment funds

The identification of the primary beneficiary involves a number of assumptions and estimates about the economic realities of the VIE and the

variable interest holders. Where we have determined that we do not have a sufficiently large variable interest to be a potential primary beneficiary or that we are the only interest holder with a sufficiently large interest, we determine the primary beneficiary using a qualitative approach based on the estimated economics of the VIE. Otherwise, we incorporate a top-down quantitative approach, allocating estimated cash flows to each variable interest holder based on seniority of each of the cash flow scenarios that are probability weighted and used to determine the VIE's expected losses.

*     *     *

As a result of adopting FIN 46, we began to consolidate certain tax credit equity funds in the first quarter of 2004 in which we are the general partner with an equity interest typically less than 1%. The equity in these funds held by the limited partners (outside investors) is reported as minority interest in our consolidated balance sheets and the investors' share of the net losses of these funds is reflected as net loss allocable to minority interest in our consolidated statements of income. The effects of consolidating these funds make the year over year comparisons difficult. As appropriate, we have indicated separately in the year over year comparison of results of operations below where the application of FIN 46 has impacted our results of operations.

69.     With respect to the restatement of previously reported financial results, the

2005 10-K, *inter alia*, stated:

On March 10, 2006, we concluded that our financial statements for the years ended December 31, 2004, 2003, 2002 and 2001 and for the first three quarters in 2005 and for each quarter in 2004 should no longer be relied upon as a result of a number of errors in the application of GAAP. Specifically, we determined that we had not: (A) correctly recognized syndication fee revenue; (B) correctly recorded impairments on investments in real estate partnerships held by our guaranteed tax credit equity funds; (C) correctly recorded consolidation entries related to our consolidated tax credit equity funds; (D) correctly capitalized interest costs on investments in real estate partnerships developing low income housing properties; (E) correctly accounted for the deferral and recognition of bond and loan origination fees and direct origination costs; (F) correctly applied the equity method of accounting for investments in certain partnerships; (G) correctly identified and valued derivative financial instruments; (H) correctly recorded income taxes; (I) correctly amortized certain mortgage servicing rights; and (J) correctly identified our segments.

70.     Finally, Defendants Falcone and Lundquist certified the 2005 10-K pursuant to the Sarbanes-Oxley Act of 2002. Specifically, their certifications represented that, among other things, the 2005 10-K did not contain any false or misleading statements of material fact or fail to disclose any material facts and fairly presented the Company's financial results and condition, as follows:

1.     I have reviewed this annual report on Form 10-K of Municipal Mortgage & Equity, LLC;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and we have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about

the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

71.     In addition, Defendants Falcone and Lundquist certified the 2005 10-K pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 that, "The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

72.     The Defendants' statements in the preceding paragraphs were materially false and misleading because they concealed from Plaintiff and the investing public the true magnitude of the Company's accounting improprieties and created the impression that the restatement of financials contained in the 2005 10-K had corrected all prior misstatements in the Company's previously released financial statements when, in fact,

the Company's financial statements continued to overstate its financial results and misrepresent its prospects, in violation of GAAP.

73.     On July 27, 2006, MuniMae issued a press release entitled, "MuniMae Announces 38th Consecutive Increase in Quarterly Distribution," in which Defendants touted another increase in quarterly dividends, *inter alia*, stating:

> MuniMae … announced today that its Board of Directors declared a distribution of $0.5025 per common share payable on August 15, 2006, to shareholders of record as of August 2, 2006. This represents an increase of 4% over the distribution for the comparable period last year. On an annualized basis, the distribution equates to $2.01 per common share and represents a 7.4% yield based on the July 26, 2006 closing price of $27.30 per share. The stated yield does not take into account any higher net return investors may realize as compared with other investments because a portion of the distribution is exempt from Federal income taxes.

74.     On August 1, 2006, MuniMae filed with the SEC a quarterly report on Form 10-Q for the quarter end March 31, 2006 (the "First Quarter 2006 10-Q"), which was signed by Defendant Lundquist and certified by Defendants Falcone and Lundquist pursuant to the Sarbanes-Oxley Act of 2002.  The First Quarter 2006 10-Q reiterated the financial results reported in the Company's April 11, 2006 press release.

75.     On August 10, 2006, after issuing restated financials for 2002, 2003, 2004 and 2005 in the Company's 2005 10-K, MuniMae filed with the SEC a Form NT 10-Q, in which it disclosed that the Company would not be able to timely file its Form 10-Q for the second quarter of 2006, stating:

> In response to the material weaknesses discovered in its assessment of internal control over financial reporting disclosed in Item 9A of our annual report on Form 10-K for the year ended December 31, 2005 (the "2005 Annual Report"), management plans to continue to review and make changes to the overall design of its control environment. In particular, management has implemented and/or plans to implement during 2006 the specific measures described below to remediate the material weaknesses described in Item 9A of the 2005 Annual Report. Many of these

remediation measures began subsequent to June 30, 2006, and management has not concluded that any of the material weaknesses in our internal control over financial reporting have been remediated.

76.     On September 13, 2006, MuniMae filed with the SEC a Form 8-K stating that the Company's "previously filed financial statements covering the fiscal years ended December 31, 2005, 2004 and 2003 ... and the first quarterly period in the fiscal year ended December 31, 2006 ... should be restated to reflect adjustments to correct certain errors... Accordingly, the Affected Financial Statements should no longer be relied upon." In the September 13, 2006 Form 8-K, Defendants cited the following items to be restated: (1) Accounting for equity commitments related to affordable housing projects; (2) Cash flow classification of cash received from investors in guaranteed tax credit equity funds; and (3) Accounting for syndication fees.

77.     On October 26, 2006, MuniMae issued a press release entitled, "MuniMae Announces 39th Consecutive Increase in Quarterly Distribution," in which Defendants touted another increase in quarterly dividends and announced that the Company had fired PricewaterhouseCoopers LLP as the Company's auditor, *inter alia*, stating:

Municipal Mortgage & Equity, LLC … announced today that its Board of Directors declared a distribution of $0.5075 per common share payable on November 14, 2006, to shareholders of record as of November 1, 2006. This represents an increase of 4% over the distribution for the comparable period last year. On an annualized basis, the distribution equates to $2.03 per common share and represents a 7.2% yield based on the October 25, 2006 closing price of $28.33 per share. The stated yield does not take into account any higher net return investors may realize as compared with other investments because a portion of the allocated income may qualify for exemption from Federal income taxes.

The Company also announced that its management recommended, and the Audit Committee of its Board of Directors approved, the engagement of KPMG LLP ("KPMG") and the dismissal of PricewaterhouseCoopers LLP ("PwC") as the Company's independent registered public accounting firm. There were no disagreements with PwC on any matter of accounting

principles or practices, financial statement disclosure or audit scope or procedure, which disagreements if not resolved to the satisfaction of PwC would have caused them to make reference thereto in PwC's reports on the Company's consolidated financial statements. The Audit Committee of the Company's Board of Directors has also engaged KPMG to audit the consolidated financial statements of the Company as of and for the years ended December 31, 2005 and 2004. The Company currently expects to become timely with its financial reports required by the Securities and Exchange Commission with the filing of its annual report on Form 10-K for fiscal year 2006.

78.     Defendant Falcone used the October 26, 2006 press release as an opportunity to reassure investors that the Company's performance continued to be "strong" and that appointing KPMG as the Company's new auditor would allow the Company to return to filing audited financials in a timely manner, stating:

> MuniMae's performance in 2006 has been strong, particularly in the origination of taxable lending products. We are encouraged with our progress year to date and expect that we will meet our performance objectives for the year.
>
> *          *          *
>
> We are pleased to announce the appointment of KPMG as the Company's independent registered public accounting firm. Everyone at MuniMae is committed to establishing financial reporting processes of the absolute highest quality and that commitment is firmly supported by our Board of Directors. We are pleased with our progress in this area, and today's announcement supports that progress. We are committed to returning to filing our financial reports in a timely fashion as soon as possible.

79.     On January 31, 2007, MuniMae issued a press release entitled, "MuniMae Announces 40th Consecutive Increase in Quarterly Distribution," in which Defendants touted another increase in quarterly dividends and the Company's purported strong performance for 2006, *inter alia*, stating:

> Municipal Mortgage & Equity, LLC … announced today that its Board of Directors declared a distribution of $0.5125 per common share payable on February 20, 2007 to shareholders of record as of February 7, 2007. This represents a 4% increase over the distribution for the comparable period last year. On an annualized basis, the distribution equates to $2.05 per common share and represents a 6.5% yield based on the January 30, 2007

closing price of $31.44 per share. Because a portion of income allocated to shareholders may qualify for exemption from Federal income taxes, the stated yield does not reflect potentially higher net returns investors may realize as compared with other investments.

\*        \*        \*

2006 Highlights

-- Increased cash distributions paid to shareholders during the year ended December 31, 2006 to $2.00 per share, a 4.2% increase from the $1.92 paid during the year ended December 31, 2005,

-- Originated $3.5 billion of new investments, and at December 31, 2006, managed a portfolio of more than $18 billion in assets,

-- Completed a strategic reorganization effort early in the year which positions MuniMae to better serve its clients and offer additional services and investment opportunities,

-- Sponsored $1.2 billion of tax credit equity investments in affordable housing projects, including a single fund with commitments for more than $500 million which represents the largest affordable housing tax credit equity fund ever syndicated in the United States,

-- Expanded MuniMae's core competency of tax-advantaged investing and its offering of socially responsible investment opportunities with the acquisition of Renewable Ventures LLC, which arranges debt and equity financing for developers and owners of clean energy generation facilities,

-- Originated $1.8 billion of investments in commercial real estate financings, and

-- Completed a $192 million fixed rate bond securitization with the private placement, by a MuniMae subsidiary, of certificates that bear interest at 4.26% per annum and have an initial term of seven years.

80.     Commenting on these results, Defendant Falcone stated:

The past year was a good one for MuniMae. We are pleased with our production volume during the year, particularly commercial real estate financings … We are very pleased with the value created for shareholders in 2006 - generating a total return of better than 30%.

81.     Between February 2, 2007 and February 9, 2007, the price of MuniMae

stock dropped from $31.74 per share to $26.61 per share.  In response to this drop, on

February 9, 2007, MuniMae issued a press release commenting on the Company's stock price, in which Defendants asserted that they knew of no reason why the price of MuniMae shares had recently declined and denied that the Company had any subprime mortgage exposure, stating:

> Management of the Company knows of no reason why the recent trading of the stock has resulted in a decrease in price. Management of the Company is aware of recent developments in the sub-prime mortgage lending markets; however, to clarify, the Company is not engaged in sub-prime or any other single family mortgage lending activities. In fact, the debt and equity financings arranged by the Company in the housing sector are for multi-family rental properties. The Company's outlook for the multi-family rental sector is positive.

82.     On May 4, 2007, MuniMae issued a press release entitled, "MuniMae Announces 41st Consecutive Increase in Quarterly Distribution," in which Defendants touted another increase in quarterly dividends, *inter alia*, stating:

> Municipal Mortgage & Equity, LLC … announced that yesterday its Board of Directors declared a distribution of $0.5175 per common share payable on May 23, 2007 to shareholders of record as of May 10, 2007. This represents a 4% increase over the distribution for the comparable period last year. On an annualized basis, the distribution equates to $2.07 per common share and represents a 7.5% yield based on the May 3, 2007 closing price of $27.56 per share.

83.     Commenting on MuniMae's latest increase in quarterly dividends and the Company's purported strong performance, Defendant Falcone stated:

> Our business is performing well. MMA Financial continues to be widely recognized as a leader in affordable housing finance, and we are encouraged by the prospects from MMA Realty Capital, and longer-term, our new business initiatives. We are pleased to be able to increase our cash distribution to shareholders and are very proud of our more than 10 year history of consistent growth in quarterly cash distributions.

84. The July 10, 2007, MuniMae issued a press release and concurrently filed with the SEC a report on Form 8-K signed by Defendant Falcone, announcing that the Company had retained Navigant Consulting Inc., to assist in completing its restatement.

85. On August 1, 2007, MuniMae issued a press release entitled "MuniMae Announces 42nd Consecutive Increase in Quarterly Distribution," in which Defendants touted the Company's 42nd consecutive increase in quarterly dividends, *inter alia*, stating:

> Municipal Mortgage & Equity, LLC … announced today that its Board of Directors declared a distribution of $0.5225 per common share payable on August 22, 2007 to shareholders of record as of August 8, 2007. This represents a 4% increase over the distribution for the comparable period last year.

86. On August 8, 2007, MuniMae held a teleconference during which "members of management delivered prepared remarks in the form of a mid-year performance review." Among other things, Defendant Falcone represented that MuniMae had no subprime exposure:

> Let me restate that **the company is not engaged in sub-prime or any other single family mortgage lending activities**. In fact, the debt and equity financings arranged by the company in the housing sector are strictly for multi-family rental properties, and our outlook for the multi-family rental sector is positive. Given recent weakness in the CMBS and CDO world, **I also want to make clear that we do not own any CMBS or CDO securities**, and, in fact, we believe that weakness in those markets generally creates a competitive advantage for us.

(Emphasis added.)

87. With respect to the pending restatement, Defendant Falcone stated, "we want to assure you that we are very focused on getting the restatement successfully completed." Defendant Pinckney added:

> Although we have previously announced our intention to complete our restatement efforts in time for filing our annual report by November 30, 2007, and we continue to work towards this goal, we believe that there is a

significant risk that we won't be able to make this date. We have asked
Navigant Consulting to work toward the November 30 date, but they are
not far enough along in their work for us to say with certainty what the
exact date will be. **What we can say is that we are devoting as many
resources as we can to getting this done as soon as we can, and we
certainly expect to finish our efforts within the first two months of
2008**.

**To give you a sense of our dedication to the restatement task, there
are approximately 92 people currently working on the restatement**.
This includes 20 company employees and 72 consultants.

(Emphasis added.)

88.     With respect to dividends, Defendant Falcone stated:

As we have stated previously, assuming we can continue to execute on our
capital plan and our business continues to perform as we expect,
management plans to ask the Board to maintain the current dividend
policy, and in that regard, **I am very pleased to announce that
yesterday, our Board of Directors declared a distribution of $0.5225
per common share payable on August 22, 2007** to shareholders of
record on August 8, 2007. This represents an approximately 4% increase
over the distribution for the comparable period last year. **This
distribution represents the company's 42 nd consecutive increase in its
quarterly distribution**. We are pleased to be able to increase our cash
distribution to shareholders and are very proud of our more than 10 year
history of consistent growth in quarterly cash distributions.

89.     Finally, with respect to "production," Defendant Falcone reported strong

growth, stating:

During the first half of 2006, the dollar value of our total production
across all business lines was approximately $1.4 billion. During the first
half of 2007, the dollar value of our total production across all business
lines (which we'll break down in greater detail later) was approximately
$1.9 billion, including approximately $290 million in production related to
an acquisition during the period.

90.     On November 2, 2007, MuniMae issued a press release entitled

"MuniMae Announces 43rd Consecutive Increase in Quarterly Distribution," in which

Defendants touted the Company's 43rd consecutive increase in quarterly dividends, *inter alia*, stating:

> Municipal Mortgage & Equity, LLC … announced today that its Board of Directors declared a distribution of $0.5250 per common share payable on November 21, 2007 to shareholders of record as of November 9, 2007. This represents a 3.45% increase over the distribution for the comparable period last year.

91.     Between November 30, 2007 and December 12, 2007, the price of MuniMae stock dropped from $17.22 per share to $13.25 per share.  In response to this drop, on December 13, 2007, MuniMae issued a press release commenting on the Company's stock price, in which Defendants asserted that they knew of no reason why the price of MuniMae shares had recently declined and denied that the Company had any subprime mortgage exposure, stating:

> Municipal Mortgage & Equity, LLC … has been asked by its shareholders to comment on the recent market activity of the Company's stock. Management of the Company is not aware of any pending transaction or event that might give rise to the recent volatility in the Company's stock price. In addition, management wants to reiterate that the Company is not engaged in sub-prime or any other single family mortgage lending activities.

92.     The Defendants' statements in paragraphs 61, 63-71, 73-91 were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts: (i) MuniMae's purported restatement of financial results in June of 2006 failed to correct numerous accounting irregularities and GAAP violations that were then known to or recklessly disregarded by the Individual Defendants and, consequently, the Company's financial results and condition continued to be misstated; (ii) Defendants' Class Period Statements concealed from Plaintiff and the investing public the true magnitude of the Company's accounting improprieties; (iii)

MuniMae's reported financial results were materially overstated as a result of Defendants' failure to consolidate on the Company's balance sheet hundreds of VIEs in which MuniMae held minority interests, as required by GAAP; (iv) MuniMae's reported financial results were materially overstated as a result of Defendants' failure to timely write-down the fair value of impaired assets "held-for-sale" including loans, bonds, derivatives, guarantee obligations, and mortgage servicing rights; (v) MuniMae's purported strong performance and earnings growth was a sham; on the contrary, the Company was performing poorly and would be required to cut its dividends; (vi) MuniMae lacked adequate and effective internal controls and procedures over its financial reporting and consequently, Defendants' certifications and other assurances regarding the reliability of MuniMae's financial reporting and the preparation of financial statements in accordance with GAAP were materially false and misleading; (vii) as a result of the foregoing, MuniMae's financial statements during the Class Period were materially false and misleading and violated GAAP and SEC Regulations.

## THE TRUTH BEGINS TO EMERGE

93.     The truth began to emerge after the stock market closed on January 28, 2008, when MuniMae issued a press release announcing that the Company was cutting its quarterly dividend by 37%, from $0.5250 to $0.33 per share.  Specifically, the January 28, 2008 press release stated:

> The reduction in the dividend distribution from $0.5250 to $0.33 per share is due to the cost of the Company's ongoing restatement of its financial statements, the decision by the Company to conserve capital to protect the long-term prospects of the business given the current volatility in the credit and capital markets, and the desire to dedicate additional capital to the high-growth Renewable Energy Finance business, an increasingly important part of the Company's business. A portion of this dividend will be paid from sources other than cash generated from operations.

94.     In addition, the Company disclosed that it would not complete its restatement of financial results by the NYSE imposed deadline of March 3, 2008, and therefore, the Company's stock was expected to be delisted by the NYSE, stating:

> The Company also announced that while it expects to have completed by the end of February, its substantive work required to prepare its 2006 financial statements and its restated audited financial statements for 2005 and 2004, the Company does not expect to be able to file its audited financial statements by its previously announced goal of March 3, 2008.

95.     On this news, the price of MuniMae stock dropped from $17.20 per share to close at $9.19 per share on January 29, 2007, representing a 47% single-day decline, on unusually heavy volume of 3,777,600 shares traded.

96.     Then, on January 29, 2008, MuniMae filed with the SEC a report on Form 8-K that provided additional details regarding the restatement, including the fact that the Company was required to consolidate on its balance sheet about 200 VIEs in which it holds minority interests, and that the Company needed to write-down the fair value of certain assets "held-for-sale" including loans, bonds, derivatives, guarantee obligations, and mortgage servicing rights.   Specifically, the Form 8-K stated that the restatement would now include the following changes to the Company's previously reported results:

> • Inclusion in our consolidated financial statements of approximately 200 variable interest entities of which we are deemed the primary beneficiary even though we own only small minority equity interests. The impact of consolidating previously unconsolidated ventures results in a substantial increase in the total assets on our balance sheet, in which we have a minor ownership interest. The net income impact may be negatively affected by (i) inclusion of our share of losses of the consolidated entities, to the extent such losses are in excess of our general partner investments in those entities and (ii) inclusion of any amount by which the limited partners' shares of losses of consolidated entities exceeds their equity in those entities.

338683.1 1

• Changes in the way we recognize revenue for our low income housing tax credit business, the largest impact of which is the deferral of revenue (syndication fees and asset management fees) related to guaranteed funds. In addition, the consolidation of these entities results in our eliminating asset management and guarantee fees, which we previously had recognized as a separate revenue item, and reflecting them instead as a component of the net income that results from the consolidation of these funds.

• Changes in the way we account for loans, including the fair value of our held-for-sale loans we used in determining the lower of cost or market value of these loans, changes in the way we determine which held-for-investment loans are impaired and the amount of the impairment, and changes in the recognition of loan origination costs.

• Changes with respect to our accounting for derivatives, including recognizing additional types of contracts as derivatives that must be marked to market, and other changes that affect the timing of profit and loss recognition.

• Recognition of additional guarantee obligations as liabilities and changing the way some recourse obligations are amortized to income.

• Changes to the estimated fair values of some of our bonds, derivatives, mortgage servicing rights and guarantee obligations, including increasing the value of some servicing rights we obtained through acquisitions or retained when loans were sold, which reduces the future income we will recognize with regard to those servicing rights.

• Other changes in accounting relating to bonds, mortgage servicing rights, equity investments, equipment, leases, including changes to the amortization and depreciation with regard to certain assets. In addition, we corrected our purchase accounting on some acquisitions, determination of our share of earnings and losses on investments accounted for under the equity method, and manner and timing of recognition of expenses with regard to share based compensation awards (none of which involved option backdating).

As a result of these changes, MuniMae further disclosed that it would not be able to meet the NYSE's March 3, 2008 deadline for the Company to file its 2006 Form 10-K, which would result in delisting by the NYSE.

97.     On this news, the price of MuniMae stock the stock dropped an additional 22%, to close at $7.13 per share on January 30, 2008, on unusually heavy volume of 4,128,200 shares traded.

## DEFENDANTS' ACCOUNTING FRAUD

98.     As referenced above, Defendants caused MuniMae to falsely state the Company's earnings, and to violate GAAP and SEC rules by overstating MuniMae's assets, revenues, and net income, and falsely certifying that MuniMae had effective internal and financial controls.

99.     SEC Regulation S-X (17 C.F.R. §210.4-01(a) (1)) states that financial statements filed with the SEC that are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements comply with GAAP, with the exception that interim financial statements need not include disclosures that would be duplicative of disclosures accompanying annual financial statements.

100.    Due to the accounting improprieties alleged herein, MuniMae presented its financial results and statements in a manner that violated GAAP, including violation of the following fundamental accounting principles:

a.  The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements (APB No. 28, ¶ 10);

b.  The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (Financial Accounting

Standards Board Statement of Financial Accounting Concepts "FASCON" No. 1, ¶34);

c.  The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources and effects of transactions, events and circumstances that change resources and claims to those resources (FASCON No. 1, ¶40);

d.  The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it.  To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASCON No. 1, ¶ 50);

e.  The principle that financial reporting should provide information about an enterprise's financial performance during a period.  Investors and creditors often use information about the past to help in assessing the prospects of an enterprise.  Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based, at least in part, on an evaluation of an enterprise's past performance (FASCON No. 1, ¶42);

f.  The principle that financial reporting should be reliable in that it represents what it purports to represent.  That information should be reliable as well as relevant, is a notion that is central to accounting (FASCON No. 2 ¶¶ 58-59);

g.  The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions (FASCON No. 2, ¶79); and

h.  The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered.  The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASCON No. 2, ¶¶95, 97).

101.    Further, the undisclosed adverse information concealed by Defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## LOSS CAUSATION

102.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated MuniMae's stock price and operated as a fraud or deceit on Class Period purchasers of MuniMae stock by misrepresenting the Company's financial results, as alleged herein.  Defendants created MuniMae's façade of success, growth and strong future business prospects through a variety of accounting manipulations, including:

•       Failing to consolidate on the Company's balance sheet hundreds of VIEs in which MuniMae held minority interests, as required by GAAP; and

- Failing to timely write-down the fair value of impaired assets "held-for-sale" including loans, bonds, derivatives, guarantee obligations, and mortgage servicing rights.

103.    By misrepresenting MuniMae's Class Period financial results, Defendants presented a misleading picture of MuniMae's business condition and prospects. Instead of truthfully disclosing during the Class Period that MuniMae's business was not as healthy as represented, Defendants caused MuniMae to falsely report financial results that did not accurately reflect the Company's true financial condition because they overstated revenue, net income, earnings, and the fair value of assets. During the Class Period, Defendants repeatedly emphasized:

- MuniMae's "long history of steady growth in cash generated by our businesses;"

- "[S]ynergies between our tax credit business and our tax-exempt and taxable lending businesses;"

- "Our business volumes continue to grow in our major business segments;" and

- "We are increasingly seeing the benefits of the diversification strategy we have pursued for the past six years."

104.    Defendants also consistently misrepresented that the Company's audited financial statements "fairly presents, in all material respects, the financial condition and results of operations of the Company."

105.    Defendants' claims of strong growth, profitability, and ability to consistently deliver increased quarterly dividends to shareholders in addition to the claims that the financial results in the Company's SEC filings presented a true picture of

MuniMae's financial condition caused and maintained the artificial inflation in the Company's stock price throughout the Class Period until the truth began to be revealed to the market.

106.    Defendants' false and misleading statements had the intended effect and caused MuniMae stock to trade at artificially inflated levels, reaching as high as $32.20 per share on December 29, 2007.

107.    On January 28, 2008 (after the markets closed), MuniMae issued a press release announcing that the Company was cutting its quarterly dividend by 37%, from $0.5250 to $0.33 per share.  The Company further disclosed that it would not complete its restatement of financial results by the NYSE imposed deadline of March 3, 2008, and therefore, the Company's stock was expected to be delisted by the NYSE.

108.    As a direct result of Defendants' disclosure that (contrary to Defendants' Class Period representations) the Company was not performing well and would be slashing its dividend for the first time in more than ten years and that the restatement was not proceeding in a timely manner, the price of MuniMae stock dropped from $17.20 per share to close at $9.19 per share on January 29, 2007, representing a 47% single-day decline, on unusually heavy volume of 3,777,600 shares traded.  This drop partially removed the inflation from MuniMae's stock price, causing real economic loss to investors who had purchased the stock prior to the January 28, 2008 disclosure.

109.    Then, on January 29, 2008, MuniMae filed with the SEC a report on Form 8-K that provided additional details regarding the restatement, including the fact that the Company was required to consolidate on its balance sheet about 200 VIEs in which it holds minority interests, and that the Company needed to write-down the fair value of impaired assets "held-for-sale" including loans, bonds, derivatives, guarantee obligations, and mortgage servicing rights.

110.    As a direct result of Defendants' disclosure that the Company's improper accounting practices were more pervasive and severe than previously disclosed, the price

of MuniMae stock the stock dropped an additional 22%, to close at $7.13 per share on January 30, 2008, on unusually heavy volume of 4,128,200 shares traded.

111.    As investors and the market became aware that MuniMae's prior financial results had been falsified and that MuniMae's actual business prospects were, in fact, poor, the artificial inflation came out of MuniMae's stock price, damaging Plaintiff and other class members.

112.    As a direct result of Defendants' admissions and the public revelations regarding the truth about MuniMae's financial results during the Class Period and its actual business prospects going forward, MuniMae's stock price plummeted from $32.20 per share on December 29, 2006, to $7.13 per share at the close of trading on January 30, 2008, on unusually heavy trading volume.  Thus, as the truth about Defendants' fraud and MuniMae's business performance was revealed, the Company's stock price plummeted, the artificial inflation came out of the stock and Plaintiff and other members of the class were damaged, suffering economic losses.

113.    The decline in MuniMae's stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of MuniMae's stock price declines negate any inference that the loss suffered by Plaintiff and other class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.

114.    While the price of MuniMae stock fell from $17.20 per share to close at $9.19 per share on January 29, 2007, representing a 47% single-day decline, the Dow Jones Industrial Average actually went up, from 12,383.89 to close at 12,480.30 on January 29, 2008 (a 0.77% increase).  The following day, when the price of MuniMae stock the stock dropped an additional 22%, to close at $7.13 per share on January 30, 2008, the Dow Jones Industrial Average closed at 12,442.83 (a 0.30% decline).  Thus, the damage suffered by Plaintiff and other members of the class was a direct result of

Defendants' fraudulent scheme to artificially inflate MuniMae'stock price and the subsequent significant decline in the value of MuniMae's stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

115.    The foregoing allegations describe Plaintiffs' general theory of damages, demonstrate that Plaintiffs' damages were caused by the scheme to defraud as alleged herein, and negate any negative inference that Plaintiffs' losses were the result of general market conditions or other factors wholly unrelated to the false and misleading information complained of herein.   Upon further investigation and expert analysis, Plaintiff may assert that there were additional inflationary or corrective events that caused or contributed to the damages Plaintiff incurred.

## ADDITIONAL SCIENTER ALLEGATIONS

116.    As alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding MuniMae, their control over, and/or receipt and/or modification of MuniMae's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning MuniMae, participated in the fraudulent scheme alleged herein.

338683.1 1

117.    The Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this Complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of personnel at the highest level of the Company, including the Individual Defendants.

118.    In particular, the following provides further support for the strong inference of Defendants' scienter: (i) the Defendants' egregious and systematic violations of GAAP that have necessitated multiple restatements of five years worth of financial results; (ii) the sheer magnitude of the restatements and accounting improprieties, as described herein; and (iii) the resignations of senior officers and directors at the time of restatements and internal investigations, as alleged herein, provide further support for the inference that the Individual Defendants either consciously or recklessly endorsed the Company's fraudulent accounting.

119.    In addition to the foregoing, Defendants were highly motivated to commit the fraud alleged herein in order to artificially boost the prices of MuniMae common stock during the Class Period in order to profit from secondary stock offerings, including: (i) the October 8, 2004 public offering of 3.15 million shares of common stock at a price of $24.40 per share, which raised $76.86 million; and (ii) the February 2, 2005 public offering of 2,575,000 common shares at a price of $26.51 per share, which raised $68.3 million.

120.    Moreover, Defendants were highly motivated to commit the fraud alleged herein in order to artificially boost the prices of MuniMae common stock during the Class Period, which the Company used as currency to fund corporate acquisitions, including: (i) the February 22, 2005 acquisition of MONY Realty Capital, Inc. from AXA Financial, Inc.; (ii) the $67 million acquisition of Glaser Financial Group, Inc., which was partially funded with the Company's stock and closed on July 1, 2005; (iii) the May 2006

acquisition of the clean energy finance company Renewable Ventures for approximately $3.0 million, including $0.6 million of common shares; and (iv) the acquisition of SLF Management, LLC, also known as the Sustainable Land Fund, which closed on September 6, 2007.

121.    Furthermore, the Individual Defendants were motivated to engage in fraud to inflate the price of MuniMae stock to enable MuniMae insiders to engage in profitable sales of their personally held shares of MuniMae stock during the Class Period.  While Defendants were engaged in their accounting fraud during the Class Period, MuniMae insiders sold a total of 485,210 shares of stock for proceeds of $12,396,468.

122.    Defendants Joseph, Falcone and Harrison took full advantage of the artificial inflation in the Company's stock price caused by their material misrepresentations and personally profited from their Class Period sales of MuniMae stock.  Specifically, during the Class Period, while in possession of material adverse non-public information regarding the Company's true financial condition, Defendant Joseph sold approximately 179,815 personally held shares of MuniMae stock for proceeds of $4,680,854; Defendant Falcone sold approximately 48,095 shares of MuniMae stock for proceeds of $1,229,519; and Defendant Harrison sold approximately 43,000 shares of MuniMae stock for proceeds of $1,131,434.

123.    While some of these stock sales were purportedly made pursuant to Rule 10(b)-501 plans, this does not immunize these insider sales because at the time the Rule 10(b)-501 plans were instituted, the Individual Defendants knew that MuniMae was engaging in improper accounting in order to inflate its revenue and issuing false and misleading financial statements, and that when this information was disclosed, it would result in a sharp decline in the price of MuniMae stock.

124.    During the Class Period, MuniMae insiders sold 485,210 shares of MuniMae stock for proceeds of $12,396,468, as set forth in the table below:

| Insider Name | Transaction Date | Shares | Transaction Price Low | Transaction Price High | Market Value |
|---|---|---|---|---|---|
| Joseph, Mark K | 06/07/06 | 3,565 | $27.45 | $27.45 | $97,856 |
| Joseph, Mark K | 05/22/06 | 7,500 | $26.75 | $26.75 | $200,641 |
| Joseph, Mark K | 05/08/06 | 7,500 | $26.75 | $26.75 | $200,641 |
| Joseph, Mark K | 04/21/06 | 7,500 | $26.75 | $26.75 | $200,641 |
| Joseph, Mark K | 04/07/06 | 7,500 | $26.30 | $26.30 | $197,236 |
| Falcone, Michael L | 04/03/06 | 6,177 | $26.37 | $26.37 | $162,879 |
| Joseph, Mark K | 03/21/06 | 7,500 | $26.26 | $26.26 | $196,978 |
| Joseph, Mark K | 03/07/06 | 7,500 | $26.35 | $26.35 | $197,638 |
| Joseph, Mark K | 02/21/06 | 7,500 | $27.03 | $27.03 | $202,703 |
| Joseph, Mark K | 02/07/06 | 7,500 | $26.25 | $26.50 | $197,814 |
| Joseph, Mark K | 01/23/06 | 7,500 | $26.75 | $26.75 | $200,636 |
| Joseph, Mark K | 01/03/06 | 15,000 | $26.00 | $26.48 | $393,610 |
| Falcone, Michael L | 01/03/06 | 6,217 | $25.95 | $25.95 | $161,331 |
| Joseph, Mark K | 12/21/05 | 3,750 | $25.59 | $25.59 | $95,945 |
| Joseph, Mark K | 12/07/05 | 3,750 | $25.76 | $25.76 | $96,616 |
| Joseph, Mark K | 11/21/05 | 3,750 | $25.00 | $25.00 | $93,767 |
| Joseph, Mark K | 11/09/05 | 3,750 | $24.50 | $24.50 | $91,875 |
| Joseph, Mark K | 10/21/05 | 3,750 | $24.50 | $24.53 | $91,912 |
| Joseph, Mark K | 10/07/05 | 3,750 | $24.50 | $24.50 | $91,875 |
| Falcone, Michael L | 10/03/05 | 6,364 | $24.49 | $24.49 | $155,854 |
| Joseph, Mark K | 09/21/05 | 3,750 | $25.15 | $25.15 | $94,313 |
| Joseph, Mark K | 09/07/05 | 7,500 | $26.22 | $26.22 | $196,680 |
| Joseph, Mark K | 08/22/05 | 7,500 | $26.00 | $26.00 | $195,000 |
| Joseph, Mark K | 08/08/05 | 7,500 | $26.02 | $26.02 | $195,131 |
| Joseph, Mark K | 07/21/05 | 7,500 | $26.48 | $26.48 | $198,612 |
| Joseph, Mark K | 07/05/05 | 15,000 | $26.00 | $26.36 | $392,704 |
| Falcone, Michael L | 07/01/05 | 4,973 | $25.91 | $25.99 | $129,145 |
| Joseph, Mark K | 06/21/05 | 3,750 | $25.83 | $25.83 | $96,846 |
| Joseph, Mark K | 06/07/05 | 3,750 | $25.44 | $25.44 | $95,387 |
| Joseph, Mark K | 05/16/05 | 7,500 | $24.50 | $24.58 | $184,050 |
| Joseph, Mark K | 04/27/05 | 7,500 | $24.50 | $24.50 | $183,750 |
| Falcone, Michael L | 04/01/05 | 5,100 | $24.41 | $24.41 | $124,482 |
| Cole, Earl W III | 03/29/05 | 3,000 | $24.70 | $24.73 | $74,136 |
| Falcone, Michael L | 01/03/05 | 4,910 | $29.67 | $29.67 | $145,688 |
| Harrison, William Scott | 12/01/04 | 43,000 | $26.20 | $26.55 | $1,131,434 |
| Barone, Angela A | 11/19/04 | 2,500 | $25.92 | $26.05 | $64,873 |
| Cole, Earl W III | 11/18/04 | 7,800 | $26.10 | $26.21 | $204,035 |
| Mentesana, Gary A | 11/17/04 | 15,000 | $26.05 | $26.16 | $391,511 |
| Falcone, Michael L | 10/01/04 | 5,028 | $25.16 | $25.16 | $126,507 |
| Banks, Robert J | 09/15/04 | 9,600 | $25.09 | $25.09 | $240,871 |
| Banks, Robert J | 09/09/04 | 86,400 | $25.04 | $25.24 | $2,172,084 |
| Banks, Robert J | 08/27/04 | 6,200 | $24.79 | $24.79 | $153,683 |
| Banks, Robert J | 08/19/04 | 81,300 | $24.39 | $24.66 | $1,993,420 |
| Falcone, Michael L | 08/10/04 | 4,200 | $23.75 | $24.05 | $100,608 |
| Barone, Angela A | 08/05/04 | 2,500 | $24.00 | $24.12 | $60,048 |
| Falcone, Michael L | 07/09/04 | 5,126 | $24.00 | $24.00 | $123,024 |
|  |  | **485,210** |  |  | **$12,396,468** |

125.    During the Class Period, Defendant Joseph sold his personally held shares of MuniMae common stock in amounts and at times that were unusual and highly suspicious, as set forth in the following table:

| Tran Type | Transaction Date | | Shares | Transaction Price | | Market Value |
|---|---|---|---|---|---|---|
| | Start | End | | Low | High | |
| S | 06/07/06 | 06/07/06 | 3,565 | $27.45 | $27.45 | $97,856 |
| S | 05/22/06 | 05/22/06 | 7,500 | $26.75 | $26.75 | $200,641 |
| S | 05/08/06 | 05/08/06 | 7,500 | $26.75 | $26.75 | $200,641 |
| S | 04/21/06 | 04/21/06 | 7,500 | $26.75 | $26.75 | $200,641 |
| S | 04/07/06 | 04/07/06 | 7,500 | $26.30 | $26.30 | $197,236 |
| S | 03/21/06 | 03/21/06 | 7,500 | $26.26 | $26.26 | $196,978 |
| S | 03/07/06 | 03/07/06 | 7,500 | $26.35 | $26.35 | $197,638 |
| S | 02/21/06 | 02/21/06 | 7,500 | $27.03 | $27.03 | $202,703 |
| S | 02/07/06 | 02/07/06 | 7,500 | $26.25 | $26.50 | $197,814 |
| S | 01/23/06 | 01/23/06 | 7,500 | $26.75 | $26.75 | $200,636 |
| S | 01/03/06 | 01/09/06 | 15,000 | $26.00 | $26.48 | $393,610 |
| S | 12/21/05 | 12/21/05 | 3,750 | $25.59 | $25.59 | $95,945 |
| S | 12/07/05 | 12/07/05 | 3,750 | $25.76 | $25.76 | $96,616 |
| S | 11/21/05 | 11/21/05 | 3,750 | $25.00 | $25.00 | $93,767 |
| S | 11/09/05 | 11/09/05 | 3,750 | $24.50 | $24.50 | $91,875 |
| S | 10/21/05 | 10/24/05 | 3,750 | $24.50 | $24.53 | $91,912 |
| S | 10/07/05 | 10/11/05 | 3,750 | $24.50 | $24.50 | $91,875 |
| S | 09/21/05 | 09/21/05 | 3,750 | $25.15 | $25.15 | $94,313 |
| S | 09/07/05 | 09/07/05 | 7,500 | $26.22 | $26.22 | $196,680 |
| S | 08/22/05 | 08/22/05 | 7,500 | $26.00 | $26.00 | $195,000 |
| S | 08/08/05 | 08/08/05 | 7,500 | $26.02 | $26.02 | $195,131 |
| S | 07/21/05 | 07/21/05 | 7,500 | $26.48 | $26.48 | $198,612 |
| S | 07/05/05 | 07/07/05 | 15,000 | $26.00 | $26.36 | $392,704 |
| S | 06/21/05 | 06/21/05 | 3,750 | $25.83 | $25.83 | $96,846 |
| S | 06/07/05 | 06/07/05 | 3,750 | $25.44 | $25.44 | $95,387 |
| S | 05/16/05 | 05/23/05 | 7,500 | $24.50 | $24.58 | $184,050 |
| S | 04/27/05 | 04/27/05 | 7,500 | $24.50 | $24.50 | $183,750 |

**179,815**                                        **$4,680,854**

126.    During the Class Period, Defendant Falcone sold his personally held shares of MuniMae common stock in amounts and at times that were unusual and highly suspicious, as set forth in the following table:

| Tran Type | Transaction Date | | Shares | Transaction Price | | Market Value |
| | Start | End | | Low | High | |
|---|---|---|---|---|---|---|
| S | 04/03/06 | 04/03/06 | 6,177 | $26.37 | $26.37 | $162,879 |
| S | 01/03/06 | 01/03/06 | 6,217 | $25.95 | $25.95 | $161,331 |
| S | 10/03/05 | 10/03/05 | 6,364 | $24.49 | $24.49 | $155,854 |
| S | 07/01/05 | 07/01/05 | 4,973 | $25.91 | $25.99 | $129,145 |
| S | 04/01/05 | 04/01/05 | 5,100 | $24.41 | $24.41 | $124,482 |
| S | 01/03/05 | 01/03/05 | 4,910 | $29.67 | $29.67 | $145,688 |
| S | 10/01/04 | 10/01/04 | 5,028 | $25.16 | $25.16 | $126,507 |
| S | 08/10/04 | 08/10/04 | 4,200 | $23.75 | $24.05 | $100,608 |
| S | 07/09/04 | 07/12/04 | 5,126 | $24.00 | $24.00 | $123,024 |
| | | | **48,095** | | | **$1,229,519** |

127.    During the Class Period, Defendant Harrison sold his personally held shares of MuniMae common stock in amounts and at times that were unusual and highly suspicious, as set forth in the following table:

| Tran Type | Transaction Date | | Shares | Transaction Price | | Market Value |
| | Start | End | | Low | High | |
|---|---|---|---|---|---|---|
| S | 12/01/04 | 12/03/04 | 43,000 | $26.20 | $26.55 | $1,131,434 |
| | | | **43,000** | | | **$1,131,434** |

### Applicability of Presumption of Reliance: Fraud-On-The-Market Doctrine

128.    At all relevant times, the market for MuniMae common stock was an efficient market for the following reasons, among others:

a)  MuniMae common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b)  As a regulated issuer, MuniMae filed periodic public reports with the SEC and the NYSE;

c)  MuniMae regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press

releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

        d) MuniMae was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

129.    As a result of the foregoing, the market for MuniMae common stock promptly digested current information regarding MuniMae from all publicly available sources and reflected such information in MuniMae's stock price. Under these circumstances, all purchasers of MuniMae stock during the Class Period suffered similar injury through their purchase of MuniMae stock at artificially inflated prices, and a presumption of reliance applies.

## NO STATUTORY SAFE HARBOR

130.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of MuniMae who knew that those statements were false when made.

338683.1 1

## CLASS ALLEGATIONS

131.    Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of MuniMae during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the officers and trustees of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

132.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MuniMae's common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MuniMae or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

133.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

134.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

135.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)  Whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)  Whether the documents, reports, filings, releases and statements disseminated to the Class by Defendants during the Class Period misrepresented material facts about the business, performance and financial condition of MuniMae;

c)  Whether Defendants participated in and pursued the common course of conduct and fraudulent scheme complained of herein;

d)  Whether Defendants acted knowingly or with deliberate recklessness in misrepresenting material facts;

e)  Whether the market price of MuniMae common stock during the Class Period was artificially inflated due to the misrepresentations complained of herein; and

f)  To what extent the members of the Class have sustained damages and the proper measure of damages.

136.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**Against All Defendants for Violations of Section 10(b) of the Exchange Act
and Rule 10b-5 Promulgated Thereunder**

137.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

138.    This Count is asserted against all Defendants and is based upon violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

139.    During the Class Period,  Defendants, and each of them, directly engaged in a common plan, scheme and unlawful course of conduct, pursuant to which

Defendants knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and other members of the class, and made various deceptive and untrue statements of material facts and omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the class.  The purpose and effect of the scheme, plan an unlawful course of conduct was, among other things, to induce Plaintiff and the other members of the class to purchase or acquire MuniMae stock during the Class Period at artificially inflated prices.

140.   During the Class Period, Defendants, pursuant to this scheme, plan an unlawful course of conduct, knowingly and recklessly issued, caused to be issued and participated in the issuance and preparation of deceptive and materially false and misleading statements to the investing public, as particularized above.

141.   As a result of the dissemination of the false and misleading statements set forth above, the market price of MuniMae stock was artificially inflated during the Class Period.  In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by Defendants, Plaintiff and the other members of the class relied, to their detriment, on the integrity of the market price of the stock in purchasing MuniMae stock.  Had Plaintiff and the other members of the class known the truth, they would not have purchased MuniMae stock or would not have purchased it at the inflated prices that were paid.

142.   In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they had a duty to promptly disseminate truthful information that would be material to investors, in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulations S-X (17 C.F.R. §§210.01 et. seq.) and other SEC regulations, including truthful, complete and accurate

information with respect to the Company's operations and performance so that the market price of the Company's publicly traded stock would be based on truthful, complete and accurate information.

143.    Plaintiff and other members of the class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

144.    By reason of the foregoing, Defendants directly violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices and a coarse of business which operated as a fraud and deceit upon Plaintiff and the other members of the class in connection with their purchases of MuniMae stock during the Class Period.

145.    As a direct and proximate result of the disclosure of the material facts that Defendants misrepresented and omitted during the Class Period, the artificial inflation that had entered the price of the Company's common stock during the Class Period was removed, causing Plaintiff and the other members of the class to suffer damages in connection with their purchases of MuniMae stock during the Class Period.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

146.    Plaintiff repeat and reallege each and every allegation contained above as if fully set forth herein.

147.    The Individual Defendants acted as controlling persons of MuniMae within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false

338683.1 1

financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading.   The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

148.   In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

149.   As set forth above, MuniMae and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's stock during the Class Period.

**WHEREFORE,** Plaintiff pray for relief and judgment, as follows:

a)   Determining that this action is a proper class action and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

338683.1 1

c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 20, 2008

Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.**

By:   _____/s/Steven J. Toll_____
Steven J. Toll, Esq . (MD Bar # 15824)
Daniel S. Sommers, Esq.
Joshua S. Devore, Esq.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Phone: 202-408-4600
Fax: 202-408-4699

Counsel for Plaintiff

338683.1 1